UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CONNIE BARNETT, | Case No. 1:21-cv-00018-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| MINNESOTA LIFE INSURANCE COMPANY and PATRICIA A. BUSKIRK, | |
| Defendants. | |
| MINNESOTA LIFE INSURANCE COMPANY, | |
| Counterclaimant/Cross-Claimant, | |
| vs. | |
| CONNIE BARNETT, | |
| Counterdefendant, | |
| and | |
| PATRICIA BUSKIRK, | |
| Cross-Defendant. | |

MEMORANDUM DECISION AND ORDER - 1

PATRICIA BUSKIRK,

        Counterclaimant/Cross-Claimant,

vs.

CONNIE BARNET,

        Counterdefendant,

and

MINNESOTA LIFE INSURANCE
COMPANY,

        Cross-Defendant

## I. INTRODUCTION

Pending before the Court is Minnesota Life Insurance Company's ("Minnesota Life") Motion for Leave to Deposit Interpleader Funds, For Injunction, Discharge and Dismissal With Prejudice, and Recovery of Fees and Costs ("Motion to Deposit Funds") (Dkt. 30) as well as Patricia Buskirk's Motion to Certify Question of Law ("Motion to Certify") (Dkt. 47). On February 14, 2022, the Court held oral argument and took the motions under advisement. Upon review, and for the reasons set forth below, the Court GRANTS in PART and DENIES in PART the Motion to Deposit Funds. The Court also DENIES the Motion to Certify.

## II. BACKGROUND

### A. Factual Background

The facts for the purpose of the instant motions are as follows.[1] In 1984, Miles E.

---

[1] Unless otherwise designated, these facts come from the Amended Complaint (Dkt. 7). Obviously, the facts

Rogers obtained a life insurance policy ("Policy") from Minnesota Life. At the time Rogers received the insurance policy, he was married to Connie Barnett. Rogers designated Barnett as the beneficiary of the Policy. Rogers and Barnett have a daughter in common. In 1999, Rogers and Barnett divorced. In 2006, Rogers married Patricia Buskirk, to whom he remained married until his death in June 2020. Barnett and Buskirk both submitted claims to Minnesota Life for payment of the full amount of the Policy, which was worth $640,000.00 ("Death Benefit"). Barnett is currently listed as the beneficiary on the Policy, although Buskirk claims to have submitted a beneficiary change form to Minnesota Life in 2012. Dkt. 9, at 6.

It is worth noting that Barnett resides in Wilder, Idaho; Buskirk is a resident of the State of California; and Minnesota Life has its principal place of business in St. Paul, Minnesota. Additionally, Rogers was a resident of the State of New Mexico at the time of his death. Dkt. 22, at 7.

## B. Legal Background

As is the common nature of defensive interpleader actions, the legal background of this case is convoluted. Barnett filed an action against Securian Financial Group, Inc., Securian Financial Services, Inc., Minnesota Mutual Life Insurance Co., and Patricia A. Buskirk in the District Court of the Third Judicial District of the State of Idaho. Dkt. 4-1. Minnesota Life and the Securian entities removed the case to federal court. Dkt. 4. Barnett amended her complaint and dropped her claims against Securian Financial Group, Inc. and

---

may evolve as the adjudicative process continues and should not be considered final.

MEMORANDUM DECISION AND ORDER - 3

Securian Financial Services, Inc. Dkt. 7. Minnesota Life filed an answer and a counterclaim for interpleader against Barnett and Buskirk. Dkt. 9, at 4.

After Barnett filed her answer to Minnesota Life's counterclaim, she filed a motion for summary judgment against both Minnesota Life and Buskirk. Dkt. 12. Notably, summons was issued for Buskirk three days *after* the motion for summary judgment was filed.[2] Dkt. 15. The summons were then returned, having been executed by Minnesota Life. Dkt. 16. The same day that the summons was returned, Barnett voluntarily dismissed all causes of action against Buskirk under Rule 41(a)(1) of the Federal Rules of Civil Procedure. Dkt. 17. However, Buskirk entered a notice of appearance that same day. Dkt. 18. A month later, Buskirk entered a crossclaim against Minnesota Life and a counterclaim against Barnett, seeking a declaratory judgment. Dkt. 22.

In summary, Barnett has a claim against Minnesota Life. Minnesota Life has a counterclaim for interpleader against Barnett and Buskirk. And Buskirk has a crossclaim against Minnesota Life and a counterclaim against Barnett. In short, this case is a three-way legal standoff, in which each party is simultaneously aggressing and defending against every other party.

---

[2] Summons were issued for Buskirk in the original state court action. Dkt. 4-5. However, Buskirk had not been served with them at the time that the case was removed to this Court. Dkt. 4, at 2. According to 28 U.S.C. § 1448, process still must be completed, and thus Barnett still had a duty to serve process. However, Barnett's failure to do so likely does not moot the First Motion for Summary Judgment that she filed. Under Rule 56 of the Federal Rules of Civil Procedure, "in the absence of a local rule or court order otherwise, a motion for summary judgment may be filed 'at any time until 30 days after the close of discovery.'" 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2717 (4th ed. 2016). However, "[w]hen the claimant seeks summary judgment at a very early stage in the litigation, the court may be reluctant to grant the motion, despite its technical timeliness under Rule 56(b). Deferring a motion is a particularly appropriate step for the court to take if it believes that the summary-judgment request is premature." *Id.*

After every party's claims had been filed, Minnesota Life filed the instant Motion to Deposit Funds. Dkt. 30. Buskirk is unopposed to Minnesota Life depositing the Death Benefit. Dkt. 30-1, at 4. Barnett is opposed to the motion and filed a response. Dkt. 39. And both Buskirk and Barnett oppose Minnesota Life being dismissed from this action with prejudice. Dkt. 30-1, at 5.

Two months before the hearing was held, Buskirk filed a Motion to Certify a Question of Law to the Idaho Supreme Court. Dkt. 47. Barnett opposes the Motion to Certify. Dkt. 51.

### III. MOTION TO DEPOSIT

#### A. Interpleader

"Interpleader is a procedural device used to resolve conflicting claims to money or property." 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 22.02[1] (Matthew Bender 3d. ed. 2021). The money or property at issue is often referred to as a stake, and the party who holds it is referred to as a stakeholder. *Id*. Interpleader is typically used to initiate a judicial proceeding. *Id*. However, a stakeholder may institute a *defensive* interpleader by filing a counterclaim or crossclaim against the plaintiff and joining the other claimants. *Id*.

A plaintiff may bring an interpleader action before a federal court in one of two ways. The party may employ either the federal interpleader statute, 28 U.S.C. § 1335, or Federal Rule of Civil Procedure 22. Interpleader actions brought under Rule 22 do not confer subject matter jurisdiction on a federal court. *Gelfgren v. Republic Nat'l Life Ins. Co.*, 680 F.2d 79, 81 (9th Cir. 1982). Therefore, a party bringing an interpleader action

MEMORANDUM DECISION AND ORDER - 5

under Rule 22 must establish subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) or § 1332 (diversity of citizenship). *Id.*

An interpleader action is designed to protect a stakeholder from the possibility of multiple claims upon a single fund.[3] *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 534 (1967). An interpleader action is typically a two-stage process. *Mack v. Kuckenmeister*, 619 F.3d 1010, 1023 (9th Cir. 2010). "In the first stage, the district court decides whether the requirements for rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund." *Id.* (quoting *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999)). In the second stage, the district court determines the respective rights of the claimants. *Id.* at 1024. In the first stage, the stake is often deposited with the court and the stakeholder is typically dismissed. However, an interpleading party is not automatically dismissed if interpleader is granted, as explained later.

The success of an interpleader claim at the first stage is "not dependent on the merit

---

[3] It is important to note the judicial policies underlying the "pragmatic" purpose of the interpleader. *Id.* at 894. "The purpose of interpleader is for the stakeholder to protect itself against the problems posed by multiple claimants to a single fund." *Lee v. West Coast Life Ins. Co.*, 688 F.3d 1004, 1009 (9th Cir. 2012) (cleaned up). These problems include "protecting against the possibility of court-imposed liability to a second claimant where the stakeholder has already voluntarily paid a first claimant," as well as limiting litigation expenses where the expenses are dependent on the existence, but not the merits, of adverse claims. *Mack v. Kuckenmeister*, 619 F.3d 1010, 1024 (9th Cir. 2010) (cleaned up). "Interpleader is designed so that stakeholders do not have to make legal predictions about the merits of claims without the benefit of civil discovery." *Michelman*, 685 F.3d at 898. An interpleader promotes judicial efficiency as all the claims can be resolved in one court instead of being ruled on by many courts in a piecemeal fashion. Interpleader also protects the plaintiffs from an unjust outcome because it disincentivizes claimants from attempting to win the "race to judgment" to secure "all or a disproportionate slice of the fund before . . . fellow claimants were able to establish their claims." *State Farm*, 386 U.S. at 533. These pragmatic and fair policies guide a court's use of its discretion in determining how an interpleader action should proceed.

of the defendants' claims." *Id*. Indeed, ruling on the merits of the claims first would reverse the order of interpleader. Although the merits of the claims are not ruled on before granting the interpleader, a stakeholder asking for an interpleader must have a good faith belief that there are or may be colorable competing claims to the funds. *Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 894 (9th Cir. 2012). This good faith requirement is "not an onerous requirement" and "is necessarily low. . . ." *Id*. Good faith requires only "a real and reasonable fear of exposure to double liability or the vexation of conflicting claims" and "does not mean that the interpleading party must show that the purported adverse claimant might eventually prevail." *Id*. For example, in *Michelman*, the Ninth Circuit concluded that the insurance company interpleaded in good faith because there was a dispute over whether the ex-husband Irwin was intended to be a contingent owner or a co-primary owner with his ex-wife Gail on their daughter's life insurance policy, even though his name was plainly listed on the contingent owner line instead of the primary owner line. 685 F.3d at 890, 893.

There are several examples of the first stage of interpleader proceedings in the District of Idaho. In *Prudential Ins. Co. of America v. Cooper*, Prudential Insurance Company was allowed to deposit the proceeds of Melvin Cooper's life insurance policy with the Court when his ex-wife and new wife disagreed whether the change of beneficiary form was valid even though Cooper had failed to place his signature on the form and had not put his new wife's name in the box listing her as the primary beneficiary. 666 F. Supp. 190, 191 (D. Idaho 1987). In *Reyes-Wilson ex rel. Wilson v. Metropolitan Life Ins. Co.*, the Court allowed Metropolitan Life to deposit the death benefits from Ms. Reyes-Wilson's insurance policy because her husband was a suspect in her murder investigation, and it was

unclear whether her children or her husband should receive the funds. 2010 WL 5391277, at *1–*2 (D. Idaho Dec. 17, 2010).

Minnesota Life brought its counterclaim for interpleader under both Rule 22 and 28 U.S.C. § 1335. Dkt. 9, at 5. Minnesota Life argues in its Motion to Deposit Funds that the requirements for an interpleader action have been met and asks that the Court (1) permit Minnesota Life to submit the Death Benefit into the Court's registry; (2) enjoin and restrain Barnett and Buskirk from instituting or maintaining any additional suits against Minnesota Life or its successors; (3) discharge Minnesota Life from any liability from the Death Benefit or any other aspects from the case; (4) dismiss Minnesota Life with prejudice; and (5) grant Minnesota Life $20,000 in attorneys' fees from the Death Benefit. Minnesota Life claims that the requirements for an interpleader action have been met because Minnesota Life is a disinterested stakeholder in possession of a single fund for which it has received multiple claims.

Barnett disagrees. Barnett claims that the Court should stay the interpleader proceedings because MLIC breached its obligations pursuant to the policy by withholding the money and not being a disinterested stakeholder. Notably, Barnett argues that Buskirk did not assert a colorable claim and so Minnesota Life acted in bad faith by giving credence to Buskirk. Barnett also claims that Minnesota Life helped to develop Buskirk's legal arguments and that doing so rendered Minnesota Life an interested party that cannot be dismissed.

Here, the Court is at the first stage of the interpleader proceedings. Because all the parties come from different states and the Death Benefit exceeds $75,000, the Court has

MEMORANDUM DECISION AND ORDER - 8

diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1). Similarly to *Prudential Ins. Co.* and *Reyes-Wilson*, there is a single fund in the case—the Death Benefit. It is also clear that there are adverse claimants to that fund—Barnett and Buskirk, both of whom were in a marital relationship at various times with the decedent, similar to the parties in *Prudential Ins. Co.* Minnesota Life is exposed to double or multiple liability for the Death Benefit, as evidenced by Barnett's and Buskirk's respective claims.

Minnesota Life acted in good faith in bringing the interpleader action. Barnett has a clearly colorable claim to the Death Benefits, as her name is on the policy. Buskirk's claim to be the rightful beneficiary is also colorable because (1) Buskirk allegedly paid the premiums of the insurance policy, (2) the possible applicability[4] of Idaho Code § 15-2-804 and New Mexico Statute § 45-2-804, and (3) Buskirk allegedly submitted a change of beneficiary form. Now, Buskirk's claims may come to naught in the second stage of the proceedings. However, the Court is not required to rule on the merits at this stage. The Court must determine only whether Minnesota Life acted in good faith, and it is clear that Minnesota Life did. Barnett and Buskirk have both made colorable claims, and Minnesota Life acted properly in bringing the interpleader.

Barnett claims that Minnesota Life is not a disinterested stakeholder entitled to interpleader because (1) Minnesota Life deemed Buskirk's claims colorable when it should not have and therefore created the controversy and (2) Minnesota Life prepared arguments used by Buskirk. These claims are rife with error. First, as explained above, Minnesota Life

---

[4] The Court is *not* saying that those statutes apply. The Court is stating that they *may* apply, and that their applicability is a reasonable question.

properly deemed Buskirk's claims colorable and acted in a disinterested manner. The mere fact that Minnesota Life refused to disperse the Death Benefits upon receiving multiple claims on it does not mean that Minnesota Life stirred up the controversy. The refusal to disperse funds is a typical element of interpleader actions. Under Barnett's reasoning, any insurance company who brings an interpleader action cannot be dismissed because they created the controversy. This reasoning does not match the pragmatic purpose of the interpleader and is therefore fallacious.

Second, Barnett claims that Buskirk's arguments regarding Idaho Code § 15-2-804 and New Mexico Statute § 45-2-804 were taken from Minnesota Life's Answer. Strictly speaking, Barnett's argument is false because neither of those statutes are referenced in Minnesota Life's Answer. Rather, the reference to those statutes is in *Buskirk*'s answer, not Minnesota Life's.[5] Dkt. 22, at 5. Minnesota Life only makes a generic reference to "Idaho law" in its Answer and Counterclaim.[6] Dkt. 9, at 6. This mistake by Barnett, although acknowledged by counsel at the hearing, undermines her argument. Furthermore, the parties discussed the Idaho statute *before* initiating proceedings. Dkt. 42, at 5. Frankly, it seems disingenuous for Barnett to suggest that Buskirk learned about the Idaho statute through Minnesota Life's legal stances *after* proceedings had begun and ignore the discussions that occurred beforehand.

---

[5] While the Court understands that mistakes happen, Barnett and her attorneys are encouraged to carefully review their citations and arguments to make sure they are true.

[6] Minnesota Life did not even respond to Barnett's Motion for Summary Judgment until after Buskirk had filed her Answer, Counterclaim, and Crossclaim (Dkt. 22) and responded to the Motion for Summary Judgment (Dkt. 23), further illustrating how erroneous Barnett's argument of inappropriate aid is.

Additionally, the implications of Barnett's claims are absurd. Barnett seems to expect that a disinterested plaintiff in an interpleader action should not offer any reasons why the claim is brought lest the plaintiff inadvertently provide an argument to either of the parties being brought into court. This is nonsense. A party bringing an interpleader action must explain why the competing claims are "colorable." *Michelman*, 685 F.3d at 894. Minnesota Life has done just that and has not come remotely close to preparing an argument for Buskirk. The fact that Minnesota Life will not benefit financially from the outcome of Buskirk and Barnett's dispute renders Minnesota Life a disinterested party. The complicated procedural background of this case does not mean that Minnesota Life is automatically designated as "interested."

The rest of Barnett's claims boil down to an argument that Buskirk's claims lack merit. As has been explained, this is not the purpose of the first stage of the interpleader. The Court must determine only whether the claims are colorable, which it has.

Because there is a single fund (the Death Benefits), adverse claimants (Barnett and Buskirk), and Minnesota Life acted in good faith, the interpleader may proceed to the second stage.

### B. Deposit

As the interpleader is appropriate, the Court grants Minnesota Life's request to deposit the Death Benefit ($640,000), plus any applicable interest, with the Court.

### C. Injunction, Discharge, Dismissal

As previously mentioned, a party may bring an interpleader using either the federal interpleader statute, 28 U.S.C. § 1335, or Rule 22. The federal courts do not distinguish

MEMORANDUM DECISION AND ORDER - 11

statutory from rule-based interpleader when addressing many issues, such as the award of attorneys' fees and costs. *See* 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §§ 1703 & 1717 (3d ed. 2001). However, in this case, it is important to note that the two types of interpleader action are treated differently when the court considers providing injunctive relief. *Gen. Ry. Signal Co. v. Corcoran*, 921 F.2d 700, 706–07 (7th Cir. 1991); WRIGHT ET AL., supra, § 1717. Here, Minnesota Life has brought both statutory interpleader and Rule 22 interpleader, appropriately claiming the court has diversity jurisdiction over the action. As both types of interpleader are proper, the Court has considerable flexibility in determining relief.

Granting an interpleader action means that the case can proceed in that procedural manner. However, granting an interpleader does not mean that a court must dismiss the stakeholder. 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 22.02[5] (Matthew Bender 3d. ed. 2021). Courts typically allow counterclaims and crossclaims to continue when the claims are "unrelated to the act of interpleading, such as negligence in preserving the fund." *Id*. The Ninth Circuit has held,

> The stake marks the outer limits of the stakeholder's potential liability where the respective claimants' entitlement to the stake is the sole contested issue; however, where the stakeholder may be independently liable to one or more claimants, interpleader does not shield the stakeholder from tort liability, nor from liability in excess of the stake.

*Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1011 (9th Cir. 2012). In other words, "interpleader protection generally does not extend to counterclaims that are not claims to the interpleaded funds." *Id*. at 1009. This limit on liability is appropriate because the interpleader is a procedural device, not a bar against substantial claims that stops plaintiffs

from asserting their rights. *Id*. at 1011. However, claims that are wrapped up in the disposition of the stake *can* be dismissed through an interpleader. Indeed, that is one of the main purposes of the interpleader.

Here, Barnett has not shown that her claims are independent of the interpleader. Barnett's Amended Complaint brings only a single claim for a breach of contract, which breach came by Minnesota Life "failing to pay her the full policy proceeds as the only beneficiary under the clear and unambiguous terms of the policy." Dkt. 7, at ¶19. This claim is a prototypical example of a claim that is solely related to the disposition of the Death Benefits and is therefore not independent. Similarly, Buskirk's only crossclaim against Minnesota Life is a request for declaratory judgment to determine which party Minnesota Life should distribute the Death Benefits to.

From a practical standpoint, dismissing Minnesota Life as a party will greatly simplify the matter before the Court. Barnett and Buskirk have not shown that they will be significantly inconvenienced or lose their claims for the Death Benefit if Minnesota Life is dismissed. Minnesota Life has agreed to deposit the Death Benefit, plus interest, with the Court and deposit its files. Dkt. 42, at 6 n.2. As such, all the relevant information will be available to Barnett and Buskirk. Additionally, if further information needs to be discovered from Minnesota Life Barnett and Buskirk can use standard discovery tools, such as depositions, to gather such information.

Barnett and Buskirk have not shown, or even claimed, that their claims are separate from the interpleader. Accordingly, the Court holds that there are no independent claims in this case—all the claims are wrapped up in the disposition of the Death Benefits. The Court

therefore DISMISSES all claims against Minnesota Life WITHOUT PREJUDICE.

**D. Attorneys' Fees**

Federal courts generally award a disinterested stakeholder the fees and costs associated with bringing an interpleader action and depositing the funds with the court. *Trs. Of Dirs. Guild of Am.–Producer Pension Benefit Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000). However, this generalization is not without limits. The disinterested stakeholder must have acted in good faith and not been dilatory. *Gelfgren.*, 680 F.2d at 81. Additionally, the costs and fees must be reasonable. In 2010, this Court held that

> [i]n interpleader actions, the scope of compensable expenses is usually limited to preparing the complaint, obtaining service of process, and preparing an order discharging the stakeholder from liability and dismissing it from the action. *Tise*, 234 F.3d at 426. Because the allowed expenses is limited, attorneys' fee awards to the disinterested interpleader plaintiff are typically modest.

*Reyes-Wilson*, 2010 WL 5391277, at *3 (cleaned up). In *Reyes-Wilson*, the Court held that the "amount requested by MetLife falls in line with those commonly granted to interpleader plaintiffs" and granted the request for $3,907 worth of attorneys' fees and costs. *Id*. In another case, this Court explained, "Attorney fees are generally paid from the policy benefits, but the amount awarded is typically modest because the fee award could deplete the fund at the expense of the party who is ultimately deemed entitled to it." *Minnesota Life Ins. Co. v. Hoffman*, 2009 WL 10677903, at *1 (D. Idaho Apr. 22, 2009) (cleaned up).

In short, "[a]n award of attorneys' fees in an interpleader action lies within the sound discretion of the court." *Prudential Ins. Co.*, 666 F. Supp. 190, 193 (9th Cir. 1987). It is worth noting that while the size of the fund plays a role in the Court's analysis of what a

modest fee is, it is by no means dispositive. Attorneys' fees must still be reasonable regardless of the size of the fund.

Here, Minnesota Life has asked for $20,000 in attorneys' fees for the money spent doing a variety of topics, including:

> reviewing the policy and file, analyzing Barnett's complaint, preparing an answer and counterclaim in interpleader, effectuating service on Buskirk, communicating with counsel for Buskirk and Barnett, responding to Barnett's Motion for Summary Judgment, preparing an answer and counterclaim in interpleader, effectuating service on Buskirk, communicating with counsel for Buskirk and Barnett, responding to Barnett's Motion for Summary Judgment, preparing an answer to Buskirk's counterclaim, preparing this motion and accompanying brief in support of, conferring with counsel for Buskirk and Barnett on this motion, and reviewing Barnett's proposed discovery and litigation plan.

Dkt. 31, at 6. Minnesota Life also claims to have spent money "responding to Barnett's opposition to Minnesota Life's request to deposit and be dismissed." Dkt. 48, at 8. Minnesota Life claims that such fees are appropriate because they "represent a de minimis amount (approximately 3%) of the $640,000.00 Death Benefit being interpled." Dkt. 31, at 6. Minnesota Life also claims to have spent "far in excess of $20,000." Dkt. 48, at 7.

While attorney fees are appropriate, Minnesota Life's request for $20,000 is excessive. Although the $20,000 is a small portion of the large Death Benefit, the attorneys' fees (in part) are so high because Minnesota Life is asking for reimbursement for activities that fall outside the typical scope of legal activities in an interpleader. As "the scope of compensable expenses is usually limited to preparing the complaint, obtaining service of process, and preparing an order discharging the stakeholder from liability and dismissing it from the action," *Reyes-Wilson*, 2010 WL 5391277 at *3, actions beyond these will need

to be justified as reasonable and necessary in this case.

However, the lack of detail that Minnesota Life has offered the Court makes it impossible for the Court to award any attorneys' fees at this juncture. Under Local Rule 54.2(b), unless a statute or court order provides otherwise, a party claiming attorneys' fees must include an affidavit with "(1) date(s), (2) service(s) rendered, (3) hourly rate, (4) hours expended, (5) a statement of attorney fee contract with the client, and (6) information, where appropriate, as to other factors which might assist the Court in determining the dollar amount of fee to be allowed." Dist. Idaho Loc. Civ. R. 54.2(b). Minnesota Life has provided only the services rendered and its bottom-line request without any other specific information. Therefore, the Court denies Minnesota Life's request for attorneys' fees. The Court will not award attorneys' fees until a final judgment is entered. At that time, Minnesota Life can renew its request for attorney fees consistent with this order.

### IV. MOTION TO CERTIFY

Buskirk filed a Motion to Certify, requesting that the Court certify a question of law to the Idaho Supreme Court under Idaho Appellate Rule 12.3. The question Buskirk requests certification for is "[w]hether a prior beneficiary designation is revoked under Idaho Code Section 15-2-804 when the decedent has passed after the statute's enactment."[7]

---

[7] The relevant part of Idaho Code § 15-2-804 states:
> (b) Revocation Upon Divorce. Except as provided by the express terms of a governing instrument, a court order or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment, a divorce or annulment of a marriage:
>> (1) Revokes any revocable:
>>> (i) Disposition or appointment of property made by a divorced individual to his or her former spouse in a governing instrument and any disposition

This statute has played an enormous part in the debate around which party should receive the Death Benefit. Indeed, Minnesota Life stated that the applicability of the Idaho statute was discussed by the parties prior to the start of litigation. Dkt. 42, at 5.

Idaho Appellate Rule 12.3 states that a United States District Court may certify a question of law to the Idaho Supreme Court if the question "is a controlling question of the law . . . as to which there is no controlling precedent in the decisions of the Idaho Supreme Court" and "an immediate determination of the Idaho law . . . would materially advance the orderly resolution of the litigation. . . ." "The decision to certify a question to a state supreme court rests in the sound discretion of the district court." *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1087 (9th Cir. 2003) (cleaned up).

Where a question is already "adequately addressed by the plain language contained in the Idaho Code and the existing Idaho case law," certification is inappropriate. *Hayden Lakes Recreational Water & Sewer Dist. v. Haydenview Cottage, LLC*, 2012 WL 13135916 at *3 (D. Idaho Mar. 2, 2012). Furthermore, where the question is one of statutory interpretation, this Court can answer that question without certification, relying on "ample authority on matters of statutory construction" from the Idaho Supreme Court. *White v. Valley Cnty.*, 2012 WL 13018504, at *2 (D. Idaho Aug. 10, 2012).

As Buskirk points out, there is no controlling precedent regarding the interpretation of this statute. However, the Idaho Supreme Court has provided ample authority on matters of statutory interpretation. *Id.* Additionally, the Idaho Supreme Court and the Idaho State

---

or appointment created by law or in a governing instrument to a relative of the divorced individual's former spouse;

Legislature have provided adequate guidance on determining whether a statute is to be applied retroactively. *See, e.g.,* Idaho Code § 73–101; *State v. Leary*, 372 P.3d 404, 408–09 (Idaho 2016). Buskirk claims that no retroactivity analysis is necessary because Buskirk is asserting that the statute is "triggered upon the death of the individual, not the date of purchase or divorce." Dkt. 47-2, at 4–5. Buskirk's assertion rests on the plain language of the statute; therefore, regardless of whether retroactivity analysis is necessary, the Court still has the necessary tools of statutory interpretation as set forth by the Idaho Supreme Court. Therefore, it is appropriate for the Court to interpret the statute without certifying it.[8]

Additionally, the Court disagrees with Buskirk's argument that certification of this question "will be the most expeditious method of resolving this case." Dkt. 47-2, at 5. Even if this Court certified the question, there is no guarantee that the Idaho Supreme Court would hear the question. Additionally, if the Idaho Supreme Court ruled on the question, this Court would still need to apply the Idaho Supreme Court's decision, which would cost further time and money. In short, certifying the question seems like the most expeditious way to prolong the case, not resolve it. Therefore, the Court DENIES the Motion to Certify.

## V. CONCLUSION

The Court grants the interpleader, orders Minnesota Life to deposit the Death Benefit and appropriate interest with the Court, dismisses the claims against Minnesota

---

[8] Both parties offered their own interpretation of the statute in their court filings regarding the Motion to Certify. While such interpretations are useful, the Court will decline to rule on the proper interpretation until it has a dispositive motion before it that has been properly briefed by both parties regarding the statute's interpretation.

Life, and for now denies Minnesota Life's request for attorneys' fees. The Court also denies the Motion to Certify. The parties shall file supplemental briefing within twenty-one (21) days of the issuance of this order regarding any necessary changes to the litigation and discovery plans.

The Court also DISMISSES Barnett's pending Motion for Summary Judgment (Dkt. 12) as premature. Because that motion was filed over a year ago when Minnesota Life was still party to the case, it is appropriate to moot the Motion for Summary Judgment. Both parties may file new motions for summary judgment.

## VI. ORDER

1. The Court GRANTS IN PART and DENIES IN PART the Motion to Deposit (Dkt. 30) as explained above.

2. Barnett and Buskirk shall contact the Clerk of the Court, or his or her deputy, to determine which account the funds should be deposited in. After the parties agree to an account, Minnesota Life shall be notified and given ten (10) days to deposit the Death Benefit with the Clerk of the Court, plus applicable interest.

3. The Clerk of the Court, or his or her deputy, shall therewith deposit the Death Benefit in the appropriate account.

4. The Court DISMISSES all claims against Minnesota Life WITHOUT PREJUDICE.

5. The Court DENIES the Motion to Certify (Dkt. 47).

6. The parties shall file supplemental briefing within twenty-one (21) days of the issuance of this order regarding any necessary changes to the litigation and discovery plans.

MEMORANDUM DECISION AND ORDER - 19

7.  The Court DISMISSES the Motion for Summary Judgment (Dkt. 12).

DATED: March 11, 2022

David C. Nye
Chief U.S. District Court Judge